IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Pil-Jae Lee (Lee), D/B/A Alpha Oil International (H.K.) ) ) ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO. H-05-0631 |
| ) ) | |
| M/V Gem of Madras, her engines, freights, tackle, apparel, etc. *in rem* and Bulk Korea Company Limited, *in personam* ) ) ) ) | |
| Defendants ) | |
| ) | |
| West Asia Maritime Limited ) | |
| ) | |
| Claimant ) | |

**MEMORANDUM AND ORDER**

A ship received fuel in Korea, but the oil company has not been paid. The Plaintiff, Pil-Jae Lee (Lee), D/B/A Alpha Oil International (H.K.) (Alpha), sued M/V Gem of Madras, her engines, freights, tackle, apparel, etc. *in rem* (Gem of Madras) and Bulk Korea Company Limited, *in personam* (Bulk Korea). West Asia Maritime Limited (West Asia) field a "Statement of Right or Interest" pursuant to Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims in which it claimed to be the owner of the Gem of Madras. Doc. 10.

Before the court are cross motions for summary judgment and supporting documentation including:

1.      Motion for Summary Judgment by Alpha Oil. Doc. 15.

2.       Cross Motion for Summary Judgment and Response to Motion for Summary Judgment by West Asia.  Doc. 17 and 18.

3.       Reply to Response and Response to Motion for Summary Judgment by Alpha Oil. Doc. 21.

**Facts**

Lee is an individual doing business as Alpha Oil.  His principal place of business is Hong Kong and he resides in Seoul, Korea.[1]  The Gem of Madras is a vessel under the flag of India and chartered by Bulk Korea, but operated by ETA Ship Management Co. Ltd. and owned by West Asia.  Bulk Korea's principal place of business is Busan, Korea.  However, it has declared bankruptcy and not appeared in this action.  Instead, West Asia appeared on behalf of its ship.  It is an Indian business entity, as is ETA Ship Management Co. Ltd.

On December 23, 2004, someone "on behalf of M.S. Choi, President of Bulk Korea," sent a fax to "Alpha Oil International," attention "Mr. D.H. Lee/A. Manager" regarding "MV Gem of Madras."  The fax stated, "we are pleased to place firm nomination with you as follows.  Vessel: Gem of Madras; Port: Pohang, ETA/D: Dec 26-27, 2004 … Supplier: Alpha Oil International (H.K.); Terms: 30DDO; Remark: As Your Offer."  Doc. 15, Exh. 3.  In response, "D.H. Lee on behalf of Alpha Oil Int'l H.K." wrote back to "Bulk Korea Co. Ltd.," attention: "Mr. J.Y. Jung/Duputy (sic) Manager," "thanks very much for yr coorp n we are pleased to confm yr nomination on behalf of Alpha Oil Int'l H.K." (sic)  The response identified the "supplier" as "S-Oil," not Alpha, and concluded with the "Remark:  as usual subject to local supplier's terms and conditions."  Doc. 15, Exh. 2.  Alpha Oil never communicated with West Asia directly,

---

[1] In this dispute, the parties appear to refer to the Republic of Korea, rather than the Democratic Peoples Republic of Korea, as "Korea."

but only with Bulk Korea.  Deposition of Pil-Jae Lee (Lee Dep.), Doc. 17, Exh. A at 1-7, 62:21-63:13.

On December 27, 2004, at the port of Pohang, Korea, the Gem of Madras received bunkers of oil, 1125 total metric tons, from the S-Oil Corporation (S-Oil).  Doc. 15, Exh. 4.  S-Oil served as the local supplier for Alpha.  It has its principal place of business in Seoul, Korea.  S-Oil received the bunkers of oil from Cosco (Korea), a Korean business entity.

On January 10, 2005, Alpha Oil sent an invoice to "master and/or charterers and/or owners of M/V Gem of Madras, C/O Bulk Korea Co., Ltd."  Doc. 15, Exh. 5.  It requested "$233,550" by January 25, 2005.  Id.  It requested payment "to:  the Bank of Tokyo-Mitsubishi, Ltd. Hong Kong."  Alpha Oil did not receive payment.

On February 25, 2005, Alpha Oil seized the Gem of Madras in Houston, Texas. West Asia posted a security on March 2, 2005 and the vessel was released the next day.

S-Oil's "terms and conditions" referenced as the "local supplier's terms and conditions" in the initial correspondence included specific terms that are disputed by the parties, but not relevant to this memorandum and order.  See, Doc. 15, Exh. 1.  Alpha Oil had not read S-Oil's terms and conditions before the bunkers were delivered. Lee Dep. at 27:8-17 and 41:1-7.  Alpha Oil never communicated directly with S-Oil, but conducted its business with COSCO, another bunker supplier. Lee Dep. at 20:20-22:2; 22:12-23. Alpha Oil did not transmit S-Oil's terms and conditions to Bulk Korea or West Asia.  Lee Dep. at 24:8-26:14.  Instead, the sales confirmations, the S-Oil Invoice to Bulk Korea, and S-Oil's bunker delivery receipt were the only documents transmitted between Alpha Oil, Bulk Korea, and S-Oil.  Lee Dep.at 24:8-26:14.

## Legal Analysis

The parties do not dispute that (1) the Gem of Madras received fuel in Korea, (2) the delivery of fuel was not a gift, and (3) Alpha Oil did not receive payment. However, the parties dispute both the terms of the contract that Alpha Oil formed when it agreed to supply the Gem of Madras with fuel and the parties bound by those terms.

District courts have jurisdiction over a civil case of admiralty. 28 U.S.C. § 1333(1). Disputes over maritime contracts are cases of admiralty. *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 290 (5th Cir.1989). A contract to provide fuel is a maritime contract because, "[a] maritime contract is '[a] contract relating to a ship in its use as such[.]'" *J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d 96, 98 (5th Cir.1992) (quoting *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 954 (5th Cir.1988), quoting 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty, § 183, at 11-6 (7th ed. 1985)). "When a contract is a maritime one … federal law controls the contract interpretation." *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 22-23 (2004) (citing *Kossick v. United Fruit Co.,* 365 U.S. 731, 742 (1961)). Thus, federal maritime law determines how this court will analyze the parties' claims unless or until maritime law dictates that this court apply another body of law to the dispute between these parties.

Although the parties ask this court to determine what terms bind which parties according to the maritime law of the United States, they have omitted the primary question facing the court: why does the maritime law of the United States answer any of the questions presented by the parties? Without any guidance from the parties, this court must engage in its own choice of law analysis. Maritime law analyzes eight factors to determine the substantive law that governs a dispute. See, *Lauritzen v. Larson,* 345 U.S. 571 (1953); *Romero v. International Terminal Operating Co.,* 358 U.S. 354 (1959); and

*Hellenic Lines Ltd.v.Rhoditis,* 398 U.S. 306 (1970). Those factors include the place of the wrongful act, (ii) the law of the flag, (iii) the allegiance or domicile of the injured, (iv) the allegiance of the defendant shipowner, (v) the place of contract, (vi) the inaccessibility of a foreign forum, and (vii) the law of the forum. *Lauritzen* 345 U.S. at 583-91, 73 S.Ct. at 928-32, 97 L.Ed. at 1268-72. "In *Rhoditis,* the Supreme Court stated that 'the list of seven factors in Lauritzen was not intended as exhaustive," and instructed courts to consider the "shipowner's base of operations' as an additional factor." *Warn v. M/Y Maridome,* 169 F.3d 625, 628 (9th Cir. 1999) (citing *Rhoditis,* 398 U.S. at 309). Although *Lauritzen* resolved a tort claim under the Jones Act, it employed "a contacts-based choice of law analysis." *Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1516-17 (11th Cir. 1985). Consequently, the Fifth Circuit determines the law that governs maritime liens by examining the factors explained in *Lauritzen*. *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield,* 658 F.2d 363, 366 (5th Cir. 1981), *reh'g denied,* 670 F.2d 182, *cert. denied,* 457 U.S. 1119.

In *Gulf Trading & Transp. Co.,* the plaintiff provided fuel to a vessel at Cristobal in the Panama Canal Zone. The subsequently bankrupt charter company failed to pay for the fuel and the ship was seized at Texas City, Texas. The Fifth Circuit agreed that the law of the United Kingdom would have governed the contract between the plaintiff and the vessel's charter pursuant to Restatement (Second) of Conflict of Laws § 188 (1971). Nevertheless, the Fifth Circuit held that the Maritime Lien Statute, 46 U.S.C. § 971, created a maritime lien against the ship itself, rendering the owner of the ship responsible for the cost of the fuel. *Gulf Trading & Transp. Co.,* 658 F.2d 363.[2]

---

[2] Six years later, when the charter of a vessel agreed to pay for fuel delivered in Spain, but failed to pay for that fuel, the company that provided the fuel seized the vessel when it docked in Houston, Texas. Under these conditions, the parties and the court agreed that Spanish law governed the dispute between the parties. *Perez & Compania (Cataluna), S.A. v. M/V Mexico I,*

Although the Gem of Madras received fuel in Korea, rather than within the territory of the United States, *Gulf Trading & Transp. Co.* defines how this court will determine what nation's law governs the dispute between Alpha Oil and West Asia.  Thus, a law other than the maritime law of the United States may determine:  first, what terms Bulk Korea accepted when S-Oil fueled the Gem of Madras and second, whether West Asia is bound by those terms.  However, this court must examine the eight factors enumerated by the Supreme Court as well as any other factors that may help the court determine what law to apply before resolving the questions that the parties presented.

In the context of this case, the "place of the wrongful act" is more properly understood as the place where the parties performed the contract, Korea, or where it was breached, an undetermined location.  The law of the flag is India's law.  The allegiance and domicile of the injured party is to Hong Kong where Alpha Oil operated or, perhaps, Korea where Lee, the owner of Alpha Oil, resides.  West Asia, the owner of the Gem of Madras, although not a party to the supply contract, is based in and owes allegiance to India.  The place of the contract would have been either Hong Kong or Korea, depending upon how the parties exchanged the written documents attached to the Plaintiff's Motion for Summary Judgment as Exhibits 2 and 3.  This court has not seen any evidence suggesting whether any other country provides an accessible forum in which to adjudicate the dispute between the parties.  However, in the absence of any evidence to the contrary, and for the purpose of this order only, it seems reasonable to believe that Korea would entertain a dispute between a resident of Korea and a Korean shipping company, that India would adjudicate a claim against one of its own companies, and Hong Kong may provide a forum for a domestic oil supplier to demand payment from a

---

826 F.2d 1449 (5th Cir. 1987).

potential debtor.  Finally, the law of any possible alternative forum is not likely to differ significantly from the law of the United States regarding the formation of contracts.  Like the United States, India and Hong Kong are former colonies of the United Kingdom and Korea's integration into the international economy probably did not occur without the establishment of law governing the formation of contracts.

None of the factors that *Lauritzen* announced suggests that this court should employ the maritime law of the United States to determine what terms bind which parties.  However, the parties have not defined what foreign law should govern the preliminary issues that this case presents nor have they explained how the law of another country would resolve the issues raised in the briefing before the court.  Disputes of material fact exist and preclude summary judgment both because the parties have not provided the court with an explanation of what law to apply to the conflicting claims or what result the court should reach under that law because foreign law is a question of fact that must be pled and proved.  *Talbot v. Seeman,* 1 Cranch 1, 5 U.S. 1 (1801); *Symonette Shipyards, Limited v. Clark,* 365 F.2d 464 (5th Cir. 1966); and *Rowan v. Commissioner of Internal Revenue,* 120 F.2d 515 (5th Cir. 1941).  In fact, a "district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so.  'Although the court is permitted to take judicial notice of authoritative statements of foreign law, nothing requires the court to conduct its own research into obscure sources.'" *Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1321 (11th Cir. 2004) (quoting *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1424 n. 10 (9th Cir. 1989)).

Because foreign law is an issue of fact and because neither party has attempted to prove or explain how foreign law would resolve any issue presented by the instant case, it is hereby ordered:

(1) The motion for summary judgment by Pil Jae Lee doing business as Alpha Oil International (HK) is DENIED. Doc. 15.

(2) The motion for summary judgment by West Asia Maritime Limited is DENIED. Doc. 17.

(3) The plaintiff, Pil Jae Lee doing business as Alpha Oil International (HK), shall file a memoranda of law and evidence from which the court may determine which country's law governs the initial questions in this case by May 31, 2006. The defendant, West Asia Maritime Limited, shall file any responses no later than June 20, 2006.

(4) Nothing in this order shall preclude either party from filing a motion relating to the convenience of this forum at any time.

SIGNED at Houston, Texas, this 6th day of March 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE